IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HONEYWELL NORMALAIR-GARRETT HOLDINGS LTD., HONEYWELL AEROSPACE UK, and HONEYWELL INTERNATIONAL INC., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 04-0028C |
| THE UNITED STATES, | ) | Judge Edward M. Damich (Trial) |
| Defendant, and | ) | |
| CARLETON LIFE SUPPORT SYSTEMS, INC., | ) | |
| Defendant-Intervenor, and | ) | |
| RAYTHEON AIRCRAFT COMPANY, | ) | |
| Defendant-Intervenor. | ) | |

**DEFENDANT-INTERVENOR CARLETON LIFE SUPPORT SYSTEMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL TO DESIGNATE WITNESSES UNDER RCFC 30(b)(6)**

Pursuant to the Court Order of May 8, 2006, Defendant-Intervenor Carleton Life Support Systems, Inc. ("Carleton") submits its opposition to Plaintiffs' Motion To Compel Defendant-Intervenor Carleton Life Support Systems to Designate Witnesses Under RCFC 30(b)(6) ("Honeywell Motion") filed on May 4, 2006. The Honeywell Motion seeks additional 30(b)(6) depositions of Carleton concerning legal issues about non-infringement positions, more appropriately addressed through expert testimony and contention interrogatories, and further information about the accused devices, previously provided through written and document discovery. As explained below, Carleton requests that the Court deny Honeywell's motion to compel Carleton to designate witnesses to testify as to Topic 3 and Topics 6 through 23 of Honeywell's first and second notices served pursuant to RCFC 30(b)(6). Carleton also requests that the Court deny Honeywell's request for an award of costs and reasonable attorneys' fees.

## I. STATEMENT OF FACTS

Plaintiffs Honeywell Normalair-Garrett Holdings, Ltd., Honeywell Aerospace UK, and Honeywell International Inc. (collectively, "Honeywell"), filed this litigation seeking reasonable compensation on the Government's purchase and use of flight training aircraft equipped with on-board oxygen generation systems ("OBOGS") that deliver breathable air to pilots. The asserted claims cover only one method of the many known methods of controlling oxygen production by OBOGS. The number of allegedly infringing OBOGS manufactured by Carleton and used by the Government totals no more than 425 units.

In July 2005, Honeywell served a Substitute Notice of Rule 30(b)(6) Deposition to Carleton on Topics 1-5 ("First Notice"). In response to the First Notice, Carleton served its objections and provided two corporate witnesses. On September 22, 2005, Honeywell deposed Russell Hart, Carleton's designee as to the operations of the accused products, for at least eight hours. (Plaintiffs' Exhibit ("Pl. Ex.") B at PE-12 – PE-13 (259:11-260:3)). On September 23, 2005, Honeywell further deposed Victor Crome, Carleton's designee as to document collection efforts and discovery, for approximately five hours. Honeywell does not dispute that Mr. Hart was fully prepared to testify as to Topic No. 2 of the First Notice, which requests in part:

> Structure, function and operation of each oxygen system (including oxygen concentrator PNs 3261132-0101, 3261132-0102, 3261132-0103, 3261132-0104, and 3261132-0105), that you have purchased or sold for use or manufacture by or for the Government, including aircraft that incorporates such systems, ….

(Pl. Ex. A at PE-4). Honeywell disputes whether Mr. Hart was fully prepared to testify as to Topic No. 3 of the First Notice, which requests the following:

> The factual bases underlying Carleton's assertion that its oxygen systems do not infringe any asserted claims of U.S. Patent No. 4,661,124, U.S. Patent No. 6,077,331 and/or U.S. Patent No. 6,383,256, including: ….

(Pl. Ex. A at PE-4 – PE-5).

Prior to seeking any individual depositions of Carleton employees, Honeywell served another 30(b)(6) notice to Carleton on an additional 18 topics. Specifically, on November 4, 2005, Honeywell served a second Rule 30(b)(6) Notice on Topics 6-23 ("Second Notice"). (*See*

Pl. Ex. D).[1] Thereafter, on November 16, 2005, Carleton served its objections to the Second Notice, specifically objecting to the second notice as defective under RCFC 30(a)(2)(B). (*See* Pl. Ex. E). More than four months later, on April 5, 2006, all parties attended a meet and confer via telephone conference to discuss the case schedule and depositions. Carleton again informed Honeywell that it stood by its previously served objections to the Second Notice. Following several brief meet and confers between Carleton and Honeywell counsel involving only the Second Notice and Carleton's objections thereto, Honeywell filed its motion to compel.

## II. ARGUMENT

The Honeywell Motion, despite having been filed three times, remains defective on both procedural and substantive grounds and should be denied. As an initial matter, Honeywell failed to meet and confer with Carleton concerning all of the grounds raised in its motion, in contravention of Rule 37(a)(2) of the Rules of the United States Court of Federal Claims ("RCFC") and Special Procedures Order For Cases Under 28 U.S.C. § 1498(a) ("SPO"), Rule 10(c)(i). Second, inasmuch as Honeywell has already obtained documentary and testimonial discovery concerning the "structure, function and operation" of the OBOGS and has sufficient notice of Carleton's non-infringement contentions, many of the topics at issue in the Honeywell Motion are redundant and thus, unduly burdensome and improper. Third, Honeywell impermissibly ignores the plain language of RCFC 30(a) in seeking a *second* 30(b)(6) deposition of Carleton. Fourth, Honeywell has failed to establish any proper basis for an additional 30(b)(6) deposition of Carleton as to the *18 additional topics* of the Second Notice.

[1] On November 14, 2005, Honeywell served a single deposition notice seeking the personal deposition of Victor Crome. Although Mr. Crome already dedicated the better part of a day to providing deposition testimony to Honeywell on September 2005 as a corporate designee, and should have been deposed at that time in his personal capacity, Carleton has consented to Honeywell's request for additional deposition time with Mr. Crome. That deposition is scheduled to occur in Davenport, Iowa on May 25, 2006.

### A. Honeywell Failed To Meet And Confer On Topic 3

Despite the requirements of RCFC 37 and SPO Rule 10, Honeywell did not meet and confer with Carleton concerning any issues raised with respect to the First Notice. RCFC 37 requires that a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court intervention." *See* RCFC 37(a)(2)(A). SPO Rule 10 similarly imposes meet and confer requirements:

> i. Before petitioning the court to resolve a discovery dispute or to impose sanctions for discovery abuses, counsel must attempt to resolve the problem with opposing counsel. Failure to consult with opposing counsel before filing a motion may result in the imposition of costs.

SPO Rule 10(c)(i). Carleton counsel is not aware of any meet and confer for Topic 3 of the First Notice, and as such, the Honeywell Motion should be denied as to Topic 3.[2]

### B. Honeywell Has Already Obtained Detailed Information About Carleton's Non-Infringement Contentions

Topic No. 3 of the First Notice seeks the "factual bases underlying Carleton's assertion that its oxygen systems do not infringe any asserted claims." (*See* Pl. Ex. A). Honeywell does not dispute that it obtained 30(b)(6) testimony concerning the "structure, function and operation" of the accused devices from Mr. Hart pursuant to Topic No. 2. The "factual bases" requested in Topic 3 are a subset of the same Topic 2 information concerning the "structure, function and operation" of the Carleton OBOGS. Contrary to Honeywell's arguments, Mr. Hart provided the factual bases underlying Carleton's non-infringement positions because he fully testified about how the accused OBOGS operate, and what operations the accused OBOGS could and could not perform -- these facts are precisely the factual bases for Carleton's non-infringement positions.[3]

---

[2] Honeywell counsel may improperly assert that a meet and confer occurred during the deposition of Mr. Hart in September 2005. At best, any exchange between counsel involved issues concerning Carleton's objections during that deposition and, if a "meet and confer" had occurred, the instant motion would clearly be stale and out of time with respect to Topic No. 3.

[3] Honeywell does not dispute that it has obtained sufficient notice of Carleton's non-infringement positions through contention interrogatories.

Presumably, Honeywell seeks testimony from Carleton as to whether the accused OBOGS practice the claim limitations of the asserted patent claims. Under *Exxon Research,* however, such fundamentally legal testimony is not appropriate prior to expert discovery. Rather, Honeywell will obtain the discovery it seeks regarding "infringement" through expert discovery and Carleton's responses to contention interrogatories.

This Court previously explained in *Exxon Research and Eng'g Co. v. United States,* 44 Fed. Cl. 597, 601 (1999) that "[w]hether a 30(b)(6) deposition or contention interrogatories are more appropriate is decided on the facts of each case." In the current litigation, contention interrogatories "would yield the most reliably and in the most cost-effective, least burdensome manner information that is sufficiently complete to meet the needs of the party and the court." *Id.* at 602. For patent cases, where the factual bases of contention involve complex judgments about the relationship of "… (2) 'claims' as particularly set forth in the patent in issue and in other patents or other material presented to the patent office, and (3) principles of intellectual property law set forth in statutes and in judicial opinions," "infringement" issues are properly addressed through contention interrogatories. *See McCormick-Morgan, Inc. v. Teledyne Industries, Inc.*, 134 F.R.D. 275, 287 (N.D. Cal. 1991) (recognizing that "'the bases for contentions' really consists of *quasi-legal* argument").

Honeywell's reliance on *De Graffenreid* for the proposition that it may unilaterally decide to conduct discovery on all issues, legal or otherwise, under RCFC 30(b)(6) is misplaced. *De Graffenreid* is distinguishable because it involved the fact deposition of the patentee and inventor of the patent-in-suit who refused to answer factual questions about his own patent. *See De Graffenreid v. United States,* 2 Cl. Ct. 640, 643-44 (1983). Here, it is uncontested that Mr. Hart answered all of Honeywell's factual questions about the accused OBOGS. Honeywell's only complaint is that Carleton could not designate a corporate lay witness to testify about the function, structure and operation of the accused devices specifically within the legal context of patent "infringement." Neither does Honeywell deny that Carleton has fully responded to interrogatories seeking disclosure and explanation of its non-infringement positions. Moreover,

Honeywell does not even address the fact that it is in possession of Defendants' full claim constructions, or the fact that expert disclosures and discovery are forthcoming in this case. Requiring infringement-related testimony from a lay witness is both unfair and unnecessary.

Honeywell also relies upon *Fondren v. Republic Am. Life Ins. Co.*, 190 F.R.D. 597, 600 (N.D. Okla. 1999) for the proposition that Carleton should have sought a protective order with respect to Topic 3. Despite Honeywell's rhetoric to the contrary, Mr. Hart did not refuse to answer questions concerning Topic 3, and thus, a protective order was unnecessary. Carleton counsel explained during the deposition that "the Witness is fully prepared to answer any questions about any of Carleton's systems …." (Pl. Ex. B at PE-14 (261:1-3)). Furthermore, Mr. Hart also clarified his response after repeatedly being badgered with claim jargon involving Topic No. 3:

> HONEYWELL COUNSEL: I have to ask the other one again because we didn't get an answer. What factual -- what are the factual bases underlying Carleton's statements made in response to Honeywell's Interrogatory No. 5 that Carleton products do not include said controlling step including the steps of determining the cabin pressure, and then selecting the appropriate overall cycle time and relative duration of each phase from predetermined values appropriate for the determined cabin pressure?
>
> CARLETON COUNSEL: Again, the same objection with respect to the legal question. The Witness can answer to the extent he can answer and respond to that question.
>
> MR. HART: My answer is the same. I think I've provided you with information on how our system works. I've tried to answer any questions you had pertaining to the operation. I can't comment on how it does or doesn't meet these legal terms relative to the patent -- patents.

(Pl. Ex. B at PE-18 – PE-19 (264:20-265:18)). In fact, as to factual information, Mr. Hart was more than forthcoming – even backtracking on occasion to assist the examining attorney. For example, when asked earlier during the deposition about how cabin pressure was utilized by the accused device, Mr. Hart readily provided responsive testimony:

> HONEYWELL COUNSEL: Now, there's something over here called cabin. Do you see that?

> MR. HART: Yes. I'm sorry. I forgot to mention that there's a cabin port on the controller monitor. Internal to the controller monitor is a pressure transducer that measures the absolute pressure of the cabin environment. So there's a pneumatic connection between our concentrator and the cabin so that we can tell what the absolute pressure is in the cabin.

(Carleton Exhibit ("Carleton Ex.") A at CE-3 (51:5-14)). Because Honeywell failed to identify any specific factual basis not provided by Mr. Hart about the operations of the accused OBOGS, its motion should be denied.

### C. The Second Notice Is Improper, Defective And Unenforceable

The Second Notice served by Honeywell is legally inoperative, and accordingly, the Honeywell Motion to compel should be denied. Specifically, Honeywell failed to seek leave of court to conduct a second 30(b)(6) deposition of Carleton as required by RCFC 30. Honeywell argues that its conduct is justifiable for three reasons: (1) RCFC 30(a)(2)(B) does not apply to corporate depositions; (2) the First 30(b)(6) deposition remains "open"; and (3) leave of Court should be granted under RCFC 30(a)(2) consistent with RCFC 26(b)(2). Honeywell is wrong on all of these grounds. First, RCFC 30(a)(2)(B) applies to both individual deponents and corporate depositions under RCFC 30(b)(6). *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189 (1st Cir. 2001). Second, Carleton has met its obligations in connection with the First Notice and it is not "open." Finally, Honeywell addresses only the "cumulative, duplicative, or unduly burdensome" limitations of RCFC 20(b)(2) and ignores all the remaining limitations provided by the Rule.

#### 1. RCFC 30(a)(2)(B) Applies To All Depositions

Honeywell fails to demonstrate why RCFC 30(a)(2)(B) does not apply to corporate depositions conducted under RCFC 30(b)(6). RCFC 30 provides that:

> A party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2) … if … the person to be examined already has been deposed in the case.

RCFC 30(a)(2)(B). This rule requires that where, as here, a party attempts to retake the deposition of another party by serving a second notice of deposition without leave of court, the

second notice is not valid. For example, in *Ameristar Jet* two designees for the corporate party GEAE were previously deposed under Rule 30(b)(6). The First Circuit upheld the district court's decision to quash a second Rule 30(b)(6) subpoena under Rule 30(a)(2)(B), reasoning that "[b]ecause this second Rule 30(b)(6) subpoena was issued to GEAE without leave of the court, it was invalid." *Ameristar Jet*, 244 F.3d at 192.

A more thorough analysis of the applicability of RCFC 30(a)(2)(B) is provided by the more recent decision in *In re Sulfuric Acid Antitrust Litigation*, 2005 U.S. Dist. LEXIS 17420 (N.D. Ill. 2005). (*See* Carleton Ex. B). The reasoning of *In re Sulfuric Acid* explicitly rejects the conclusion reached in *Quality Aero*, the sole case on which Honeywell relies, providing for the dissimilar treatment of individual and Rule 30(b)(6) depositions:

> The sole support for this conclusion was the Advisory Committee Notes to the 1993 Amendment to *Rule 30* in which the Committee noted that "[a] deposition under *Rule 30(b)(6)* should, *for purposes of* [calculating the ten deposition limitation of *Rule 30(a)(2)(A)*], be treated as a single deposition even though more than one person may be designated to testify." But it hardly follows from this that 30(b)(6) depositions should, "for [other] purposes," also be treated "differently from depositions of individuals."

*In re Sulfuric Acid*, 2005 U.S. Dist. LEXIS 17420, *11 (emphasis in original). The Court further explained that "the rule requiring leave of court to take a second deposition applies to an entity that is deposed pursuant to *Rule 30(b)(6)*. Even though a party may be deposing a different corporate representative, it is still seeking a 'second' deposition of the entity." *In re Sulfuric Acid* at *13 (quoting 7 *Moore's Federal Practice*, § 30.05[1][c] at 30-30.3 (3d ed. 2005)). Thus, Carleton respectfully submits that this Court adopt the rule of *Ameristar Jet* and *In re Sulfuric Acid* and reject Honeywell's excuses for non-compliance with RCFC 26(a)(2)(B).

### 2. The First Notice Depositions Are Complete And Topics 6-10 Of The Second Notice Are Duplicative Thereof

Other than expressing confusion about Mr. Hart's answer as to preparation for Topic No. 3, Honeywell does not provide any justification for holding open a deposition that occurred in September 2005. Moreover, Honeywell does not explain why it has waited until this stage of the

litigation to seek the very information it has already obtained. This belated argument, which was not addressed in any meet and confer between the parties, should be rejected.

Topics 6-10 of the Second Notice are essentially duplicative of Topics 1-5 of the First Notice – a kind of "discovery mulligan" for Honeywell – presumably because it did not ask the questions it wished it had the first time around.[4] Furthermore, Honeywell fails to explain the scope and content of Topics 11-23 of the Second Notice, and fails to offer any justification as to why it must conduct depositions on these additional topics. Finally, Honeywell's failure to meet and confer in good faith with Carleton justifies this Court's exercise of its discretion in denying Honeywell's request for leave to obtain a second Rule 30(b)(6) deposition of Carleton.

### 3. Honeywell Ignores The Limitations Of RCFC 26(b)(2)

Under RCFC 26, the Court may limit the use of discovery methods for many different reasons. Specifically, RCFC 26 provides:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had amply opportunity by discovery in the action to obtain the information sought; or (ii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

*See* RCFC 26(b)(2). Honeywell has utterly failed to consider or address the entirety of RCFC 26(b)(2), and instead mentions the factors of cumulative, duplicative and burdensome in brief. For example, Honeywell did not even consider RCFC 26(b)(2)(iii) which concerns a balance between the discovery sought and a number of factors including the importance of the proposed

[4] As explained by Honeywell, Topics 6 and 7 of the Second Notice are the same as Topics 1 and 2 of the First Notice except for the addition of the "or any other customer" language. Honeywell similarly admits that Topic 8 "covers the same material covered by Topic 3." (Pl. Mem. at 10). For Topic 9, Honeywell again asks for a "discovery mulligan" as to Carleton's efforts to locate documents. Topic 10 is admittedly the same as Topic 5 concerning Carleton's discovery efforts.

discovery. For at least the following reasons, the Honeywell Motion should be denied under RCFC 26(b) because Honeywell failed to establish: (1) the importance of the proposed discovery; (2) why it could not have included Topics 11-23 in the First Notice; (3) why the discovery cannot be obtained through less burdensome measures; and (4) that the benefits of the discovery sought outweigh the burden imposed on the Defendants, including the Government.[5]

## III. CONCLUSION

For the reasons stated above, Carleton respectfully requests that this Court deny Honeywell's motion to compel Carleton to testify as to Topic 3, deny Honeywell's motion to compel Carleton to designate witnesses under RCFC 30(b)(6) with respect to Topics 6-23, and deny Honeywell's accompanying request for costs and reasonable attorneys' fees.

Respectfully submitted,

Dated: May 19, 2006

s/Bert C. Reiser

BERT C. REISER
J. JAY GUILIANO
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 783-0800
Facsimile: (202) 383-6610

Attorneys for Defendant-Intervenor Carleton Life Support Systems, Inc.

[5] Honeywell also seeks an award costs and reasonable attorneys' fees under RCFC 37(a)(4)(A). An award of costs, however, cannot be made if "the court finds that that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified . . . ." *See* RCFC 37(a)(4)(A). As noted above, Honeywell did not meet and confer with Carleton concerning Topic 3, nor has Honeywell established that Carleton was not substantially justified in relying upon RCFC 26(a)(2)(B). Accordingly, Honeywell's request for costs and attorneys' fees should be rejected.